IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

WES WINTERS and KAY GOFFENA
WINTERS,  f/d/b/a
WES WINTERS RESORT PARK,

                Plaintiffs,

      vs.                            No. CIV. 97-0346  BB/LCS

THE CHARTER OAK FIRE INSURANCE
COMPANY, a subsidiary of THE TRAVELERS
INSURANCE COMPANIES, INC.,
Connecticut corporations authorized to do
business in New Mexico; INSURANCE
SOLUTIONS, INC., d/b/a BROWN, SELIGMAN
& THOMAS, f/d/b/a BUNDY, SELIGMAN &
THOMAS, and ADJUSTMENT SERVICES, INC.,

                Defendants.


**MEMORANDUM OPINION**

      THIS MATTER comes before the Court on the Motion of Defendant Charter Oak Fire Insurance Company for Summary Judgment (Doc. 73), filed April 17, 1998, and Plaintiffs' Motions for Summary Judgment (Docs. 75 and 79), filed April 17 and 20, 1998.  Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendant's Motion for Summary Judgment should be DENIED, and Plaintiffs' Motion for Summary Judgment should be DENIED, except to the extent implicit in the Court's denial of Defendant's Motion.

I. <u>Facts and Procedural History</u>

After Charter Oak Fire Insurance Company refused to pay a claim under an insurance policy which it had issued to plaintiffs, plaintiffs sued Charter Oak under diversity for unfair trade practices, bad faith, breach of contract, negligence, and prima facie tort.  Charter Oak filed a counterclaim, seeking a declaratory judgment that it has no obligation for plaintiffs' loss.

The parties have stipulated to the following facts, for purposes of these Motions for Summary Judgment:  In March 1995, a water line broke in plaintiffs' clubhouse which caused soaking and subsequent shifting of the soil beneath the building, leading to structural damage. Charter Oak does not stipulate to these facts for all purposes of the litigation but argues only that, even if the facts were as stipulated, there would be no coverage.[1]  It contends that under the stipulated scenario, plaintiffs' damage is not covered due to the "earth movement" and "settling" exclusions in the insurance policy, and it has filed a Motion for Summary Judgment seeking a ruling to that effect, as well as on all counts of plaintiffs' complaint.  Plaintiffs have filed their own Motion for Summary Judgment, seeking a favorable ruling on the issue of policy coverage.

II. <u>Analysis</u>.

    A.  <u>The "earth movement" exclusion does not apply to bar coverage</u>.

        1.  <u>In New Mexico, "earth movement" includes only naturally-occurring phenomena</u>.

---

[1] Defendant's Memorandum in Support of its Motion for Summary Judgment (hereafter, "<u>Defendant's Memorandum</u>"), at 3, 9; Memorandum Brief in Support of Plaintiffs' Reply (hereafter, "<u>Plaintiffs' Reply</u>"), at 1-2.

The policy at issue is an "all risk" policy.[2] Such a policy:

> creates a special type of coverage extending to risks not usually covered under other insurance, and recovery under an 'all risk' policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage.

C. H. Leavell & Co. v. Fireman's Fund Ins. Co., 372 F.2d 784, 787 (9th Cir. 1967). The burden is on the insurer issuing an "all risk" policy to show that the loss comes within an exclusion specified in the policy, Chase Rand Corp. v. Central Ins. Co. of Baltimore, 152 F.2d 963, 964 (2d Cir. 1945); thus, Charter Oak has the burden of establishing that the "earth movement" exclusion applies, under the facts of this case. "The insurer's interpretation, especially when it concerns an exclusion to the overall coverage, must be clearly expressed in the policy . . . The rules of contract construction are especially narrow when applied to the exclusionary provisions of insurance policies." Rummel v. Lexington Ins. Co., 945 P.2d 970, 977, 982 (N.M. 1997). "The experienced all risk insurers should have expected the exclusions drafted by them to be construed narrowly against them and should have calculated their premiums accordingly." Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co., 505 F.2d 989, 1004 (2d Cir. 1974).

The construction of an insurance policy is a matter of law which can be decided on summary judgment. Adams-Arapahoe Joint School Dist. Continental Ins. Co., 891 F.2d 772, 774 (10th Cir. 1989); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 868 F. Supp. 1278, 1287 (D. Utah 1994), aff'd, 52 F.3d 1522 (10th Cir. 1995). In construing an insurance policy, the

---

[2] The policy is described as an "all risks" policy by Defendant in Exhibit 5 to Defendant's Memorandum, Expert Report of Susan M. Popik, at 3; and by Plaintiffs in their Response to Motion for Summary Judgment (hereafter, "Plaintiffs' Response"), at 1.

Court in a diversity case looks to the law of the forum state and, if the state Supreme Court has not addressed the issue, the Court's duty is to determine, as best it can, how the issue would be resolved by the state Supreme Court.  Quaker State Minit-Lube, supra, 52 F.3d at 1527.

Charter Oak argues that, since the structural damage occurred as a result of soil moving, this unambiguously brings the occurrence within the earth movement exclusion.  However, the New Mexico Supreme Court has construed "earth movement" to cover only naturally-occurring phenomena such as earthquake or landslide, United Nuclear Corp. v. Allendale Mut. Ins. Co., 709 P.2d 649 (N.M. 1985), and it has been stipulated by the parties herein that any earth movement that occurred was caused by a man-made source, that is, a broken water line.

Although defendant argues that the policy provision in the United Nuclear case is "nothing whatsoever" like the provision at issue herein, this argument is not persuasive as it lacks support in the policy language.  Therefore, as the provisions are similar, except that the current policy contains a different lead-in clause, the United Nuclear definition of "earth movement" should apply.

2.  The lead-in clause does not change the definition of "earth movement."

Charter Oak argues that its policy contains a "lead-in" clause dealing with concurrent causation, while the Allendale policy of United Nuclear does not.    The lead-in clause to which Charter Oak points reads:

> We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

The section of the policy ushered in by the lead-in clause then goes on to list earth movement as an excludable cause, defining it as "[a]ny earth movement (other than sinkhole collapse), such as an earthquake, mine subsidence, landslide, or earth sinking, rising or shifting." It is Charter Oak's position that the effect of the lead-in language is to exclude from coverage <u>any</u> loss from earth movement, whether natural or human. The cases cited by Charter Oak to support this argument basically hold that, where a lead-in clause states explicitly that losses due to earth movement are excluded, regardless of any other cause, the distinction disappears between earth movement caused by natural forces and that caused by man-made occurrences such as a broken water line. Charter Oak also presents the expert report of an insurance attorney from California to support this position.[3] However, plaintiffs argue that the lead-in clause cannot broaden the exclusion unless the event at issue comes within the definition of "earth movement" in the first place.[4] Defendant's argument must be rejected.

          a. <u>Cases based on State Farm policies are distinguishable</u>.

Charter Oak relies on a number of cases based on policies written by State Farm Insurance Company. These cases are distinguishable in that State Farm uses unique language, not employed in standard all-risk insurance policies, and which differs from that used in the Charter Oak policy at issue here.

The lead-in clause of the State Farm policy is more specific than the Charter Oak lead-in, but most tellingly, State Farm's definition of "earth movement" includes "the sinking, rising, shifting or expanding or contracting of earth, <u>all whether combined with water or not</u>" (emphasis

---

[3] Exhibit 5 to <u>Defendant's Memorandum</u>, Expert Report of Susan M. Popik, at 3-4.

[4] <u>Plaintiffs' Response</u>, at 12-13.

added).  This language is obviously relevant to the present case.  Plaintiffs' point, that cases involving State Farm policies do not provide precedent for the present case, is therefore well taken.

Defendant's expert confirms that State Farm adopted language peculiar to itself,[5] and one of plaintiffs' experts describes State Farm as a "deviated company" which employs its own language and is "known in the industry as ones who try to push earth movement as broadly as they can."[6]  The State Farm approach also tends to indicate, by contrast, that Charter Oak did not intend to exclude earth movement "combined with water," because had it so intended, it could have adopted State Farm - type language.

The few non - State Farm cases cited by defendant do not clearly hold that concurrent causation language in a lead-in clause alters the definition of "earth movement," and plaintiffs cite a case, Cox v. State Farm Fire & Cas. Co., 459 S.E.2d 446 ( Ga. App. 1995), which holds that even the more emphatic and specific State Farm language does not expand the definition of "earth movement" beyond naturally-occurring events.

> b. The question need not be certified to state court, as the existing New Mexico authority provides the rationale for interpretation of the clause at issue.

Plaintiffs invite this Court to certify to the New Mexico Supreme Court the issue of the effect of the lead-in clause, arguing it is an issue of first impression which could have significant public policy implications.[7]  Certification is not necessary.  In addition to being intimately familiar

---

[5] "Tab 12" to Plaintiffs' Response, Deposition of Paul Hamilton, at 17-18.

[6] "Tab 3" to Plaintiffs' Response, Deposition of Garth Allen, at 79-80.

[7] Plaintiffs' Response, at 16-17.

with the processes of the state courts, this Court will follow the lead of the District Court in Utah (as approved by the Tenth Circuit):

> To date, the Utah Supreme court has not addressed this issue of Utah State law.  Thus, our duty is to determine, as best we can, how this issue [i.e., interpretation of "sudden and accidental" in an insurance policy exclusionary clause] would be resolved by the Utah Supreme Court, [citation], by considering state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority.

Quaker State Minit-Lube, supra, 52 F.3d at 1527.

The underlying rationale of the only New Mexico authority on the issue of interpretation of the phrase "earth movement," the United Nuclear case, indicates that in New Mexico, "earth movement" does not have the meaning urged by defendant herein.  In that case, the New Mexico Supreme Court explicitly recognized and relied on the doctrine of "ejusdem generis."  Wyatt v. Northwestern Mut. Ins. Co. of Seattle, 304 F. Supp. 781 (D. Minn. 1969), was specifically singled out by the New Mexico Supreme Court in United Nuclear as an example of a case which had applied ejusdem generis to construe the term "earth movement" as covering only naturally occurring phenomena.  709 P.2d at 652.  The "ejusdem generis"  rule of statutory (or contract) construction requires:

> that where general words follow an enumeration of persons or things of a particular and specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned.

State v. Foulenfont, 895 P.2d 1329, 1332 (N.M. App.), cert. quashed, 903 P.2d 240 (1995). Under this doctrine, then, it is appropriate to look at the term in its context within a paragraph and to construe it "as embracing the same general kind, class or nature of peril as its companion

words 'earthquake' and 'landslide.'" Wyatt, supra, at 782.  These sorts of perils are not covered, because major catastrophes such as these:

> are almost impossible to predict and thus to insure against . . . When such [a catastrophe] happens, the very basis upon which insurance companies operate is said to be destroyed . . . [because] no longer can insurance companies spread the risk . . . Looking at the special exclusionary clause in the policy here in question, it seems to cover situations where one single event could adversely affect a large number of policyholders . . . [which] gives some force to the view that the various exclusions were not intended to cover the situation as here where 'earth movement' occurred under a single dwelling, allegedly due to human action of third persons in the immediate vicinity of the damage.

Wyatt, supra, at 783.

In the Charter Oak policy, the term "earth movement" is subject to the qualifier, "such as an earthquake, mine subsidence, landslide, or earth sinking, rising or shifting." In the context of the rest of the examples, it is apparent that the policy is intended to exclude only "occasional major disasters" which affect large numbers of people at once, rather than "human action . . . [occurring] in the immediate vicinity of the damage."  By singling Wyatt out, the New Mexico Supreme Court also implicitly adopted Wyatt's recognition that it is the scale of the event, in combination with its cause, which places it outside the definition of "earth movement."  As one New York court noted, "[d]eterioration of the fill below one house is certainly not large-scale earth movement."  Barash v. Ins. Co. of North America, 451 N.Y.S.2d 603, 607 (N.Y. Sup. Ct. 1982).

Plaintiffs' industry expert provides factual support for this reasoning.  He testified in his deposition that he was involved with the committee that drafted this form policy, and the intention when it was drafted was to eliminate coverage of naturally-occurring earthquake-type phenomena.

He relies for this opinion on "what earth movement means to adjusters and to reasonable people in the insurance industry." He concluded that the term earth movement was intended to apply to such things as a natural earthquake, "not motivated by some other accident or exogenous factor like settling or a leaky pipe," because otherwise there would be no need for a separate exclusion for settling. [8]

            c. <u>The parties are assumed to have employed terms in an insurance policy in accordance with prior judicial interpretations</u>.

When terms in an insurance policy have been interpreted by prior judicial decisions in a particular way, it will be assumed that the insurer was aware of these interpretations and intended the terms to mean what the courts had previously held them to mean. <u>United Nuclear</u>, <u>supra</u>, at 484. In 1985, <u>United Nuclear</u> held that the "earth movement" exclusion applies only when such movement is due to naturally-occurring causes. No subsequent New Mexico case has re-interpreted the phrase, and that construction ought to govern the term as it is used in this policy, which was first issued to plaintiffs in 1990. Since New Mexico by judicial decision restricts the term "earth movement" to naturally-occurring phenomena, Charter Oak is assumed to have intended this definition of the term when it included it in the policy language. If it intended to overturn an accepted judicial definition, it should have done so more explicitly, as State Farm did. Even defendant's expert insurance attorney concedes that, "[a]t a minimum, this claim presents a legitimate question as to the interpretation of the relevant policy language."[9]

---

    [8] <u>Plaintiffs' Response</u>, at 13; "Tab 3" to <u>Plaintiffs' Response</u>, Deposition of Garth Allen, at 76-79.

    [9] Exhibit 5 to <u>Defendant's Memorandum</u>, Expert Report of Susan M. Popik, at 4.

In general, ambiguities in an insurance policy are to be construed in favor of coverage, King v. Travelers Ins. Co., 505 P.2d 1226, 1231 (N.M. 1973), and "exceptions from coverage are to be strictly construed against the insurer when their application is doubtful," Sandia Oil Co., Inc. v. Beckton, 889 F.2d 258, 260 (10th Cir. 1989).  As noted above, an exclusion has to be clearly stated in order to be effective, and this is especially true when the interpretation urged by the company goes against a judicial interpretation. The Court will construe the exclusion in this case strictly, limiting it as the New Mexico Supreme Court has to naturally-occurring phenomena. Under that construction, the earth movement exclusion does not apply to bar coverage in this case.

       3.  <u>The "efficient proximate cause" doctrine is not applicable</u>.

"Efficient proximate cause" is a doctrine of insurance law which holds that "[i]f the initial event, the 'efficient proximate cause,' is a covered peril, then there is coverage under the policy regardless whether subsequent events within the chain, which may be causes-in-fact of the loss, are excluded by the policy." Safeco Ins. Co. of America v. Hirschmann, 773 P.2d 413, 416 (Wash. 1989).  Charter Oak anticipated in its initial memorandum that plaintiffs would argue that the water break, a covered peril, is the efficient proximate cause of their loss in spite of the fact that a subsequent event, the earth movement, is excluded by the policy and thus, coverage exists even though an excluded event appears in the chain of causation.

Defendant and plaintiffs agree that New Mexico courts have not considered nor adopted the doctrine of "efficient proximate cause" in the context of first-party, all-risk insurance (although the New Mexico Supreme Court has approved its use in construing other types of insurance policy provisions; see, e.g., Couey v. National Benefit Life Ins. Co., 424 P.2d 793

(N.M. 1967)). Plaintiffs again invite the Court to certify this question to the state Supreme Court.[10] This is not necessary, however, since the doctrine only comes into play when there are two causes of a given loss, one of which is a covered peril, the other an excluded peril. Because the Court finds that the occurrence in this case does not constitute "earth movement" at all, there is no need to address this unresolved issue of state law, since we are not dealing with competing covered and non-covered causes, as the non-covered cause –"earth movement" – is no longer a factor.

      B.  <u>The "settling" exclusion does not apply in this case to bar coverage</u>.

          1.  <u>Defendant has not shown that "settling" was the sole cause of the damage</u>.

The "settling" exclusion in the Charter Oak policy comes under a different heading from the "earth movement" exclusion and is not preceded by the "regardless of any other cause" language. Plaintiffs argue that the absence of this language means that, in order for this exclusion to be effective, Charter Oak must show that settling was the sole cause of the damage. They cite <u>Pace Properties, Inc. v. American Mfrs. Mut. Ins. Co.</u>, 918 S.W.2d 883, 886 (Mo. App. 1996):

> Paragraph two omits the 'regardless of any other cause' language found in the paragraph one exclusions. The absence of such language indicates the exclusions in paragraph two only apply when they are the <u>sole</u> cause of loss. It follows that if <u>a</u> covered cause of loss is a cause of loss, a paragraph two exclusion cannot apply. [Emphasis added].

This reasoning is sound. The Charter Oak policy explicitly distinguishes between these categories of exclusions, based on whether concurrent causation should or should not be a factor.

---

[10] <u>Plaintiffs' Response</u>, at 15-17.

Plaintiffs' expert witness confirms this interpretation of the lack of a lead-in clause in his deposition:

> Q. How should this claim have been adjusted?
> A. Identify that the building sustained damage . . . Then you either identify an exclusion that gets rid of it, or it's covered. And I don't think it should have taken very long to identify there was no exclusion that got rid of it. The settling exclusion has no concurrent causation language which precedes it, therefore, if a contributing cause was water, it's covered . . .[11]

Neither of Charter Oak's experts addresses the effect of the absence of the lead-in clause on interpretation of the "settling" provision,[12] nor does defendant argue against plaintiffs' interpretation; thus, it is reasonable to require defendant to show that settling was the sole cause of damage to plaintiffs' building in order for the "settling" exclusion to be effective. Defendant has not done this. Both parties have stipulated, for purposes of these Motions, that a water break soaked the ground, causing movement of the soil, leading to the structural damage at issue. Thus, "settling" is not the sole cause of damage to plaintiffs' building, since a water break is mixed into the chain of causation. Nor does the mix of stipulated causes raise the issue of "efficient proximate cause." Defendant's burden under the "settling" exclusion, which is not preceded by a lead-in clause with concurrent causation language, is to show that settling was the sole cause of plaintiffs' damages. It is not enough for defendant to show two causes, one covered and one not; as soon as a second cause arises, the exclusion is ineffective since it is no longer the "sole" cause.

---

[11] "Tab 3" to <u>Plaintiffs' Response</u>, Deposition of Garth Allen, at 75.

[12] <u>See</u> Exhibits 5 and 6 to <u>Defendant's Memorandum</u>, Expert Reports of Susan Popik and Paul Hamilton.

       2.  <u>The "settling" in this case was abrupt rather than gradual</u>.

"Settling" has generally been taken to mean a gradual, natural process that every building endures. When the settling occurs from an accidental cause and happens abruptly and unexpectedly, that is not the sort of "settling" to which the policy language refers. <u>See</u>, <u>Ariston Airline & Catering Supply Co., Inc. v. Forbes</u>, 511 A.2d 1278, 1286 (N.J. Super. Ct. Law Div. 1986) (cracking, shrinking, and bulging, when caused by normal settling, would not be covered, whereas that "resulting from the application of some external force" would be); <u>Holy Angels Academy v. Hartford Ins. Group</u>, 487 N.Y.S.2d 1005, 1007 (N.Y. Sup. Ct. 1985) ("it is not unreasonable for an ordinary individual . . . to conclude that the policy language 'settling, cracking' contained in a paragraph beginning, 'Loss caused by: wear and tear . . .' was limited in meaning to the gradual sinking of a building from the yielding of the ground under its foundation or by the natural constriction and expansion of its construction materials"); <u>Boston Co. Real Estate Counsel, Inc. v. Home Ins. Co., Inc.</u>, 887 F. Supp. 369, 373 (D. Mass. 1995) (finding the settlement exclusion effective, because "the damage to the building was caused by factors such as gradual soil compression and/or design defect rather than 'sudden forces'"); <u>New Hampshire Ins. Co. v. Robertson</u>, 352 So.2d 1307, 1310 (Miss. 1977) (the policy "would appear to exclude loss by settling and cracking due to ordinary swelling, expansion, settling or cracking as opposed to settling or cracking caused by some other external agent (here the water leak)").

Albeit in a different context, <u>United Nuclear</u>, <u>supra</u>, at 652, cites with approval the holding of <u>Barash v. Ins. Co. of North America</u>, <u>supra</u>, at 606, that settling means normal wear and tear only: "The implication given to the average insurance buyer is that what is excluded is the normal, gradual re-adjustment of the building materials when it occurs in foundations, walls,

floors or ceilings." Thus, although there is precedent to the contrary, it appears the New Mexico Supreme Court approves the "normal wear and tear" approach, and this construction of the term is bolstered by the fact that the Charter Oak policy lists the "settling, cracking, shrinking or expansion" under a general heading of "wear and tear."

### 3. The "ensuing damage" clause is irrelevant under the stipulated facts.

Both parties discuss in their memoranda the "ensuing damage" phrase, which follows the "settlement" exclusion and modifies it by providing that there will be coverage if loss or damage by the "specified causes of loss" (including water damage) results from the settling. This issue arises because Charter Oak asserts that the water break occurring in March 1995 may have been caused by settling brought about by an earlier water break in 1987, for which plaintiffs have already been compensated and which in any case occurred prior to the time Charter Oak issued its first policy to plaintiffs.

These facts are not relevant to the present summary judgment motions, however, which proceed under a stipulated scenario that the March 1995 break was new damage, caused by a water line break which led to soaking and abrupt settling of the soil. Whether the current damage was caused by the March 1995 break, or by an earlier, already-compensated event, and whether the March 1995 event was itself caused by a pre-existing condition, are issues falling outside the stipulated facts presented by the parties for purposes of these motions and on the present record constitute issues of material fact which cannot be resolved on summary judgment.

    C.  <u>There is no need to consider the "collapse" provision, nor whether the policy covers "water damage"</u>.

Because the Court finds that the earth movement and settling exclusions of this all-risk policy are inapplicable under the stipulated facts, there is no need to consider the "collapse" and "water damage" provisions raised by plaintiffs.

    D.  <u>Issues of fact exist on the issue of equitable estoppel</u>.

Plaintiffs have responded to defendant's Motion with their own Motion for Summary Judgment.  In their opening memorandum, plaintiffs argue that Charter Oak should be equitably estopped from claiming that pre-existing damage relieves them from coverage obligations.  This argument is inappropriate for summary judgment, since a number of factual issues require resolution before equitable estoppel could be applied.  These include whether plaintiffs honestly and completely revealed the prior claims on their original application for insurance, whether Charter Oak was otherwise aware of the prior claims and alleged pre-existing damage, whether Charter Oak conducted an adequate inspection of the premises before issuing the policy, and whether plaintiffs' earlier repairs were adequate.  These Motions are premised on a stipulated set of facts which assumes no pre-existing damage.  The unresolved issues of fact surrounding the overall course of dealings between Charter Oak and these plaintiffs presently preclude summary judgment for either side.

### III.  Conclusion

The Court will deny Defendant Charter Oak's Motion for Summary Judgment since, as a matter of law, the insurer has failed to demonstrate that the "earth movement" or "settling" exclusions apply under the stipulated facts.  Plaintiffs' Motion for Summary Judgment will also

15

be denied, except to the extent that the Court holds that the "earth movement" and "settling" exclusions do not bar coverage. Beyond those facts stipulated for purposes of these Motions, disputed issues of fact remain, precluding summary judgment for either party. In light of this disposition, there is no need to certify any issue to the New Mexico Supreme Court, and to the extent plaintiffs' argument in this regard is taken a motion to certify, it is Denied.

An Order in accordance with this Memorandum Opinion will issue.

Dated at Albuquerque this 8th day of May, 1998.

/s/ Bruce D. Black
BRUCE D. BLACK
United States District Judge